David M. Stein (State Bar No. 198256)
Evan W. Woolley (State Bar No. 286385)
Michael D. Wilburn (State Bar No. 303181)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Phone: 213.576.1000
E-Mail: david.stein@alston.com
evan.woolley@alston.com
michael.wilburn@alston.com

Attorneys for Declaratory Judgment Plaintiff
TOTAL IMPORT SOLUTIONS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| TOTAL IMPORT SOLUTIONS, INC, d/b/a Nanoskin Car Care Products, a California company,<br><br>Plaintiff,<br><br>v.<br><br>SURF CITY GARAGE BRANDS, LLC., a California Company, and TIMOTHY D. MILLER, an individual,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR: (1) DECLARATORY RELIEF OF NON-INFRINGEMENT OF PATENT; (2) DECLARATORY RELIEF OF INVALIDITY OF PATENT; and (3) DECLARTORY RELIEF OF NON-BREACH OF CONTRACT**<br><br>Filed: December 1, 2016 |

Plaintiff Total Import Solutions, Inc. d/b/a Nanoskin Car Care Products ("Plaintiff" or "TIS") alleges as follows:

## INTRODUCTION

1. This action arises out of Surf City Garage Brands, LLC's ("Defendant" or "SCG") efforts to eliminate its competition in the crowded and competitive market of automotive appearance products. TIS and SCG (collectively, the "Parties") are competitors in the automotive appearance aftermarket, specifically with regard to cleansing products. TIS and SCG entered into a supplier agreement (the "Agreement") on October 21, 2015 that, among other things, established a seller-buyer relationship between the Parties, and allowed TIS's continued manufacture and sale of products that did not trespass SCG's existing intellectual property rights. Less than one year later, Mr. Timothy Miller of SCG contacted Mr. Jerry Heilan of TIS, threatening legal action for infringement of U.S. Design Patent No. D716,631 ("the 'D631 Patent') and breach of the Agreement. TIS has attempted to clarify and resolve the issue informally, but Mr. Miller and SCG now demand that TIS agree, by December 1, 2016, to cease and desist from manufacturing or selling products, even though these products do not infringe SCG's patent(s) or cause a breach of the Agreement, or face legal action, including threats to seek injunctive relief barring TIS from conducting its business. Miller and SCG appear determined to eliminate TIS as a competitor by improperly removing TIS products from the market through threatened injunction relief. The removal of TIS products will undoubtedly result in a loss of sales and goodwill for TIS. SCG's conduct, claims of infringement, and continued threat of legal action gives rise to an actual controversy.

## PARTIES TO THE ACTION

2. Plaintiff Total Import Solutions, Inc., d/b/a Nanoskin Car Care Products ("TIS"), is a California company with its principal address at 14700 Radburn Ave., Santa Fe Springs, CA 90670. TIS is a manufacturer and wholesaler of popular automotive appearance products, including Clayzilla, which it sells to SCG. TIS also

manufactures and sells products including Mother's Clay 2.0 ("Clay 2.0") and Griot's Garage Brilliant Finish Synthetic Clay ("Synthetic Clay") (collectively, the "Clay Products").

3. On information and belief, Defendant SCG Brands LLC, is a California company with its principal address at 5872 Engineer Dr., Huntington Beach, CA 92649. SCG is a competitor to TIS in the market for automotive appearance products.

4. On information and belief, Defendant Tim Miller is an individual residing in California. Mr. Miller is the principal of SCG and the owner of record of United States Design Patent D716,631, so TIS believes he may be a necessary party.

**JURISDICTION AND VENUE**

5. This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

6. This Court has exclusive federal jurisdiction over the parties and the subject matter of the action pursuant 28 U.S.C. §§ 1331, 1332, and 1338. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the claims not brought under a federal statute because those claims are related to, and form part of the same case or controversy, as the federal question claims.

7. This Court has personal jurisdiction over SCG because SCG markets its products in California, its products are sold in California, and SCG agreed to purchase its manufactured product from a California company while in California. In addition, the Agreement requires any legal dispute to be pursued here.

8. This Court has personal jurisdiction over Tim Miller because, as the principal of SCG, he participates in the manufacture, marketing, and selling of SCG products in California. On information and belief, Mr. Miller constructively licensed U.S. Design Patent D716,631 to TIS in connection with SCG's manufacture, marketing, selling, and purchase of products in California.

9. Venue is proper under 28 U.S.C. §§ 1392(b). Mr. Miller and SCG purchase and market their products in this district, the alleged acts have occurred or are

occurring in this district, and Mr. Miller and SCG are subject to personal jurisdiction in this district. In addition, the Agreement requires any legal dispute to be pursued here.

## FACTUAL BACKGROUND

### The Crowded Market for Automotive Appearance Products

10. The market for automotive appearance products is crowded and competitive.

11. Competitors seek to gain certain market share through the manufacture, use, and sale of products that provide a cleaner vehicle to the customer.

12. Common products used and sold in this industry include an applicator and pad to clean the surface of a vehicle.

13. Although applicator designs may appear similar at first glance, they vary widely by their function and design.

14. Similarly, cleaning pads vary in both material and design.

15. One of the now common materials used in cleaning pads is a derivative of an earlier "Clay Bar" originally developed in Japan around 1995.

16. Since that time, the use, manufacture, and sale of pads from different materials has evolved, but the "Clay" name has remained in the name of many cleaning bars, even though they may actually contain no clay at all.

17. For example, a product purportedly embodying the 'D631 Patent is referred to as "ClayZilla" even though it does not contain clay.

18. The 'D631 Patent was filed on October 10, 2013 and issued on November 4, 2014.

19. The claimed ornamental features of the 'D631 Patent are functional. For example, the shape and finger grooves allow for better grip, the hemispherical profile of the pad allows for a comfortable grip, the pattern on the cleaning pad allows for effective cleaning of a surface, and the oval shape of the pad allows for even pressure distribution while cleaning.

20. The claimed ornamental features of the 'D631 Patent are found in the prior

art. For example, the 'D631 Patent claims a textured bottom and pads with textured bottoms that were well-known in the prior art. Features like finger grooves and hemispherical shapes were well-known techniques for improving grip. An oval shape is a common shape for a cleaning pad.

**<u>The October 21, 2015 Supplier Agreement Between TIS and SCG</u>**

21. On October 21, 2015, TIS and SCG entered into a "Supplier Agreement" whereby TIS agreed to sell and supply certain products to SCG, including the Clayzilla pad and applicator.

22. In accordance with the Agreement, SCG agreed to buy, on a non-exclusive basis, the ClayZilla product from TIS.

23. SCG was aware that TIS sold other "Clay Bar" cleaning pads before entering into the Agreement. For example, in late 2011, TIS introduced a new cleaning pad made from a "polymerized rubber skin" material. TIS has sold a variety of products similar to those involved here for several years.

24. The Agreement provided that TIS was free to manufacture and sell non-similar products to third parties, so long as it did not infringe certain of SCG's rights, including the 'D631 Patent or a related pending utility patent application.

**<u>The TIS Clay Products Do Not Infringe the 'D631 Patent Because the Designs are Plainly Dissimilar</u>**

25. There are numerous differences between the ornamental features of the TIS Clay Products and the 'D631 Patent. Some of these are described and depicted below.

26. For example, the 'D631 is egg-shaped, but the Clay 2.0 is mouse shaped. The grooves on the top of the 'D631 design are biased towards the back end of the pad, but the grooves on the top of the Clay 2.0 are biased towards the front of the pad.

| | |
|---|---|
|  FIG. 3 |  |
| ‘D631 Patent, Figure 3, Top View | The Clay 2.0 Product, Top View |

27. The ‘D631 has side finger grooves while the Clay 2.0 has no finger groove on the side. The ’D631 also has a taller vertical profile than the Clay 2.0.

| | |
|---|---|
|  FIG. 4 |  |
| ‘D631 Patent, Figure 4, Side View | The Clay 2.0 Product, Top View |

28. Griot’s Synthetic Clay also differs from the ‘D631in that it is round in shape, flat on top, and has no finger grooves.

| | |
|---|---|
|  |  |
| Griot's Synthetic Clay, Top View | Griot's Synthetic Clay, Side View |

**<u>TIS is not Violating the Agreement by Selling the Clay Products Because They Differ in Design and Utility from the ClayZilla Product</u>**

29. There are numerous design and utility differences between the ClayZilla Product and the Clay Products.

30. For example, the profile of the 'D631 Patent is defined by a thin bottom pad with the same egg-shaped exterior outline, and a relatively thick base and textured bottom surface. The Clay 2.0, in contrast, has a thinner base and thicker pad.

31. The textured bottom surface of the 'D631 Patent is significantly different from the bottom surface of the Clay 2.0, providing a different method for cleaning a surface. For example, the textured bottom surface ("polymerized rubber skin") of Clayzilla features a flat and smooth surface, which can be used only with water-based lubricants containing silicone/glycerine/propylene glycol when the car surface is free of loose dirt. It does not have the utility/function of "clay-as-you-wash." The textured bottom surface of the Mothers Clay 2.0 and Griot's Clay Products features a diamond-patterned groove with loose dirt collection ability, which enables one to use them with regular detergent/dish washing soap to allow for "clay-as-you-wash" utility/function.

32. The cleaning pad of the 'D631 Patent is removable, whereas the cleaning pad of the Clay 2.0 is fixed.

**SCG's Multiple Threats of Legal Action**

33. In October, 2016, less than one year after entering the Agreement with TIS, Mr. Miller of SCG sent a letter to Mr. Heilan of TIS threatening legal action for infringement of the 'D631 Patent and breach of the Agreement by the Clay 2.0 Product.

34. In a response letter, TIS acknowledged SCG and Mr. Miller's concern and attempted to clarify the issue, explaining that TIS's products did not infringe, and providing a detailed explanation of several differences.

35. On November 29, 2016, Mr. Miller sent another letter to Mr. Heilan that again threatened legal action, including to seek an injunction barring TIS from selling its products, with a deadline set for December 1, 2016 at 5:00 p.m. Pacific if TIS did not "immediately cease and desist from the Violating Practices and notify [SCG] of same in writing."

36. Despite TIS's attempts to alleviate SCG and Mr. Miller's concerns, it is apparent that SCG and Mr. Miller are determined to pursue legal action against TIS to improperly remove TIS's products from the market.

37. Mr. Miller's continued threats of legal action for patent infringement and under the Agreement put TIS in the precarious position of either abandoning the legal manufacture and sale of the its Clay Products or pursuing alleged improper behavior.

38. TIS therefore seeks a declaratory judgment to avoid the obvious harm caused by SCG's apparent attempt to eliminate TIS as a competitor.

**FIRST CAUSE OF ACTION**

(Declaration of Non-Infringement of Design Patent Against Defendant Surf City Garage Brands, LLC and Timothy Miller

(35 U.S.C. § 289; 28 U.S.C. § 2201)

39. TIS re-alleges and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs.

40. TIS's products, the Mother's Clay 2.0 and the Griot's Garage Brilliant Finish Synthetic Clay, do not infringe U.S. Design Patent D716,631.

41. By virtue of the foregoing, there is a justiciable controversy between TIS and SCG as to TIS's right to make, sell, or use these products.

42. TIS is entitled to a declaratory judgment that it is not infringing, and has not infringed, U.S. Design Patent D716,631.

**SECOND CAUSE OF ACTION**

(Declaration of Design Patent Invalidity Against Defendant Tim Miller)

(35 U.S.C. §§ 101 *et seq*.; 28 U.S.C. § 2201)

43. TIS re-alleges and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs.

44. U.S. Design Patent D716,631 is invalid under 35 U.S.C. § 171 for failure to claim design patent-eligible ornamental features. U.S. Design Patent D716,631 is directed to functional features. Based on how SCG is apparently construing the scope of its intellectual property rights, it also appears that the design patent is invalid over the prior art under various sections of the Patent Act, including 35 U.S.C. §§ 101, 102, and/or 103.

45. By virtue of the foregoing, there is a justiciable controversy between TIS and Timothy Miller as to the validity of U.S. Design Patent D716,631, and as to TIS's right to make, sell, import, or use the Clay Products.

46. TIS is entitled to a declaratory judgment that U.S. Design Patent D716,631 is invalid.

**THIRD CAUSE OF ACTION**

(Declaration of Compliance of Contract with SCG)

47. TIS re-alleges and incorporates by reference, as is fully set forth here, the allegations of the preceding paragraphs.

48. TIS's sale of the Clay Products is not precluded by, or in violation of, the Supplier Agreement. Nevertheless, SCG continues to allege that the sale of these products violates this Agreement. TIS references the Agreement in this complaint but does not attach it due to confidentiality considerations.

49. By virtue of the foregoing, there is a justiciable controversy between TIS and SCG as to the compliance of the Parties with the Supplier Agreement.

50. TIS is entitled to declaratory judgment that TIS has not breached the Supplier Agreement with SCG.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

**ON ALL CAUSES OF ACTION**

51. For costs of suit incurred herein; and

52. For such other and further relief as the court may deem necessary and proper.

**ON THE FIRST CAUSE OF ACTION**

53. For a declaration that TIS's product do not infringe United States Design Patent D716,631; and

54. For a finding that this is an exceptional case giving rise to an award of reasonable attorney fees to TIS.

**ON THE SECOND CAUSE OF ACTION**

55. For a declaration that the Design Patent D716,631 is invalid; and

56. For a finding that this is an exceptional case giving rise to an award of reasonable attorney fees to TIS.

**ON THE THIRD CAUSE OF ACTION**

57. For a declaration that SCG's sale of the Clay Products does not breach the October 21, 2015 Supplier Agreement between TIS and SCG.

DATED: December 1, 2016

RESPECTFULLY SUBMITTED,

**ALSTON & BIRD LLP**

BY: /S/ David M. Stein
DAVID M. STEIN

Attorneys for Declaratory Judgment Plaintiff
TOTAL IMPORT SOLUTIONS, INC.